UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**VANN'S INC.,**

Debtor.

Case No. **12-61281-7**

# MEMORANDUM OF DECISION

At Butte in said District this 21st day of May, 2013.

After due notice, hearing was held on May 6, 2013, in the Chapter 7 Trustee's Objection to final applications for fees and costs filed by attorneys Perkins, Coie (Docket No. 383) in the sum of $318,332.64, and Hamstreet & Assoc. (Dkt. 379) in the sum of $501,047.14.  In regard to each fee request, it is undisputed that as of the chapter 11 petition date, Hamstreet had an outstanding bill of $4,648.12 and Perkins had a pre-petition fee and expense amount owed of $31,374.36.  It is also uncontested that Hamstreet's fee request includes $5,535.00 for preparing its fee application after the appointment of a Chapter 11 Trustee, and likewise Perkins claims $6,631.59 in fees and expenses after the appointment of the Chapter 11 Trustee.  Under *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), the court may not award fees to debtor's attorneys or other professionals after appointment of a chapter 11 trustee.  As to Perkins, it waived any claims for pre-petition fees as an administrative expense in its employment application (DOG1-1).

Denial of the pre-petition fee requests is sufficient to satisfy the Trustee's objection as to

1

the creditor status of both professionals and the Trustee's objection on that ground is rejected.

I further reject Trustee's contention that Hamstreet used independent contractors in the performance of its obligation to the estate as such services were paid by Hamstreet from its fee request pursuant to a stipulation with the U.S. Trustee that a sharing arrangement conflicts with 11 U.S.C. § 504. The U.S. Trustee and Hamstreet entered into two stipulations that resolved this issue which were approved by this Court (Dkt. 195 & 203). That issue is moot.

The Debtor, founded in 1961, was a retailer of appliances and consumer electronic goods. By the Chapter 11 bankruptcy petition date of August 5, 2012, Vann's employed 160 persons in 5 retail stores, and Apple designed mobile store in Missoula (OnStore), a warehouse in Lolo and a call center in Missoula. Vann's sold appliances, consumer goods and related products together with outdoor equipment, and clothing, footwear for outdoor activities. E-Commerce sales represented one half of total company sales. In 2011, Vann's generated a total of $100.8 million in sales, but suffered a net loss of $1.3 million. Sumbstantial losses began in 2008.

Early in 2012 Vann's hired Gerald O'Connell to act as interim chief executive officer, O'Connell contacted Clyde Hamstreet in anticipation of receiving a letter from dated June 20, 2012, from Vann's primary lender GE Commercial Distribution Finance Corp. ("GE"). After having received assurance from GE one week earlier that it would cooperate in a chapter 11 liquidation plan, GE's letter advised Vann's that unless certain unachievable conditions on financing were met by July 20, 2012, GE would terminate Vann's inventory flooring credit facility. By August 3, 2012, GE was owed $4,959,963.00. Thus, GE's cooperation was essential for chapter 11 success.

Moreover, as testified by McConnell, Vann's business operation was in shambles.

Information accounting systems and practices were outdated and inadequate; accounting functions were performed manually, there was no practice of preparing meaningful budgets or cash projections, and its personnel were inept at key financial positions.  By this time, GE was owed about $5.5 million, a workout with GE was not possible, and thus a chapter 11 liquidation plan to deal with GE and other creditors was the only viable solution left to the Board of Directors.  Thereupon, McConnell and the Board engaged the services of Perkins, Coie and Hamstreet and Associates to prepare the chapter 11 petition.

   After filing the Chapter 11 petition on August 5, 2012, the Debtor also filed a motion for post-petition financing with a $2 million loan from First Interstate Bank (Dkt. 4).  On September 14, 2012, GE filed a supplemental objection to the DIP loan noting that through December 28, 2012, the Debtor had a net cash flow loss of $6,132,300.00.  Thereupon, GE on September 18, 2012, filed a motion to convert the case to Chapter 7 (Dkt. 181), noting that pursuant to the DIP interim order to obtain up to $500,000 in post-petition financing the Debtor funded at least $320,000.00 into a segregated account for professional fees plus a carveout available from CDF's collateral to chapter 11 professional up to $250,000.00.  Thereafter a Chapter 11 Trustee was appointed upon request of the Unsecured Creditors Committee ("UCC"), upon which motion the Court on October 2, 2012, appointed Richard Samson as Chapter 11 Trustee.  Further on October 26, 2012, the Court approved the stipulation between the Chapter 11 Trustee, First Interstate Bank, GE, the UCC and U.S. Trustee to convert this case to Chapter 7.  Thus, from the above, it is clear the carveout for professional fees was fixed at $670,000.00, and all professionals were aware of that fact.

   The issues at the hearing held May 6, 2013, involved resolution of fee and expense

requests filed by Perkins, Coie and Hamstreet Associates. The applications were filed as follows with Trustee's settlements of 5 other applications, to wit:

| Applicant | Fees Claimed | Costs | Settlement |
|---|---|---|---|
| Perkins | $302,095.11 | $16,237.53 | $0 |
| Hamstreet | 462,104.75 | 38,942.39 | 0 |
| Bataglia | 260,700.50 | 7,041.46 | 196,625.00 |
| CBIZ | 122,396.00 | 2,554.06 | 91,741.00 |
| D&H | 0 | 11,771.22 | 11,771.72 |
| Richardson | 18,465.00 | 396.90 | 13,852.00 |
| Dye | 27,500.00 | 44.06 | 20,228.00 |
| Totals: | $1,193,234.36 | $76,987.62 | $334,217.22 |

Thus, the balance of the carve out fund is $335,782.78. The fees sought by Perkins and Hamstreet total $764,199.86 and costs total $55,179.92 for total requests of $819,379.78. The carve out fund is short by $483,596.22 to pay in full the fees and costs of Perkins and Hamstreet.

The Bankruptcy Court has "an independent judicial responsibility to evaluate fees requested from the estate." *In re Crown Oil*, *Inc.*, 257 B.R. 531, 568 (Bankr. D. Mont. 2000); *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994). In *Busy Beaver*, the court explained:

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

"The burden of proof to show entitlement to all fees requested from the estate is on the applicant," and "is not to be taken lightly." *Crown Oil*, 257 B.R. at 531. "All expenses and fees must be shown as both actual and necessary under § 330(a)(3) of the Code. *Id.*; *accord, In re Love*, 163 B.R. 164, 166 (Bankr. D. Mont. 1993).

Pursuant to 11 U.S.C. § 330(a)(3), in reviewing a fee application:

[T]he the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3).

A primary inquiry is whether the services benefitted the estate. For Chapter 11 professionals to obtain payment, a successful reorganization is not required. However, a conversion to Chapter 7 merits inquiry into the benefit of such professional services to the estate in pursuit of the reorganization. This Court has explained:

> While it is not necessary to have a successful reorganization for debtor's counsel to be awarded fees, fee may be denied when counsel should have realized that reorganization was not feasible and therefore services in that effort did not benefit the estate.

5

*Crown Oil*, 257 B.R. at 539, quoting *In re Crown Oil, Inc.*, 18 Mont. B.R. at 283, (quoting *In re Kohl*, 95 F.3d 713, 714 (8th Cir. 1996)); *see also*, *In re Lederman Enterprises, Inc.,* 997 F.2d 1321, 1324 (10th Cir. 1993) (fees may be disallowed where counsel knew or should have known that reorganization was not a viable possibility). In severely limiting the awarded fees, this Court in *Crown Oil*, noted that "[b]oth professionals knew or should have known early on in this case that reorganization was not feasible." *Id.* at 540, citing *Kohl,* 95 F.3d at 714 (other citation omitted).

On the first day of the Chapter 11 proceeding, Debtor's professionals filed the DIP Motion (Dkt. 4), presenting a rather strong financial position and claiming that "existing lenders are adequately protected, by their existing liens and by the additional adequate protection described in this Motion, for all the financing proposed in the Motion." Dkt. 4, pp. 2-3. They represented that "GE Finance and any other inventory lenders are more than adequately protected by the equity cushion they already enjoy in their collateral." *Id.*, p. 4. They represented that Debtor only required DIP financing in the amount of $2 million. *See id.*, p. 3. That representation was illusory. Further, in the DIP Motion, the Debtor promised to "file a plan of reorganization within 60 days of the Petition Date, in form acceptable to the bank." That promise was misguided.

In this case, Hamstreet began providing services to the Debtor Vann's on June 21, 2012, in anticipation of filing for bankruptcy relief. As of the petition date Hamstreet billed Vann's a total of $247,393.97, and held $58,604.17 of Vann's money as a remaining retainer. Dkt. 198. As for Perkins, it too began pre-bankruptcy legal work for Vann's in anticipation of filing for Chapter 11 relief and was paid $156,926.31 before the August 5, 2012, bankruptcy petition date.

6

Therefore, between these two parties Vann's was billed over $435,000 in fees, and they were paid a majority of those billings. Clearly, they were also pre-petition creditors of the Debtor. According to the Debtor's first monthly operating report ("MOR") (Dkt. 191), Vann's had lost $1,043,908.00 in the first month of the Chapter 11 proceeding. Included in that loss was $290,000.00 in charges from Hamstreet and Perkins, which were noted as "Restructuring Fees." Dkt. 191, p. 40.

After noting substantial losses for the period through December 28, 2012, of $1,132,300.00, GE Commercial Distribution Finance Corporation ("GE") filed a motion to convert the case to Chapter 7. On September 28, 2012, the Unsecured Creditors Committee (UCC) filed a motion to appoint a Chapter 11 trustee because "the Committee has lost confidence in the Debtor's decision making processes and believes an independent fiduciary with particular liquidation experience is warranted . . . ." The Debtor resisted the motion, whereupon, GE then filed a motion to convert to Chapter 7 (Dkt. 211). On October 2, 2012, the Court appointed Richard Samson as Chapter 11 Trustee and thereafter on October 26, 2012, the Court approved a stipulation between the Chapter 11 Trustee, First Interstate Bank, the UCC and U.S. Trustee to convert the case to Chapter 7.

From the above, it is clear that during the pre-petition period devoted to restructure of the Debtor in a Chapter 11 case, Perkins and Hamstreet were paid significant funds of over $400,000.00 in a 5 month period. This fact must be taken into consideration in ruling on the pending fee and cost requests by Perkins and Hamstreet, particularly when one of the fee award criteria in *Crown Oil* holds:

> While it is not necessary to have successful reorganization for debtor's counsel to

be awarded fees, fees may be denied where counsel should have realized that reorganization was not feasible and therefore services in that effort did not benefit the estate.

*Crown Oil,* 257 B.R. at 539 (quoting cases).

In order to apply that salutary standard in this case, I find the proper and necessary course of action and exercise of discretion is to apply the carveout standard set by the parties and lender FIB which set $670,000.00 aside for payment of Debtor's professionals and UCC professionals. Indeed, Perkins counsel acceded to such plan. Ex. 4. In sum, Debtor's professionals provided their best estimates of reasonable fees and then added a $250,000 cushion. It is only prudent, and indeed necessary, that this Court hold the professionals to such estimates. *In re Love,* 163 B.R. 164, 173-74 (Bankr. D. Mont. 1993), citing *In re Chas. A. Stevens*, 105 B.R. 866, 873 (Bankr. N.D. Ill. 1989), which holds:

> Although the court will not enslave professionals to the exact amount of their projected budgets, such forecasts must be given substantial weight when reviewing fee requests.

In *Stevens*, as here, the Court was clear that for professionals after setting fee requests "to apply to this Court after such enormous overruns and expert payment in full is unrealistic and unreasonable." *Id.* at 873.

The balance of the carve out left to pay Perkins and Hamstreet as noted above is $335,782.78. I conclude that it is only equitable and fair that Perkins and Hamstreet split that sum, with an award of $167,891.39 to each as a reasonable final fee and cost award, particularly in light of the pre-petition bankruptcy services paid of over $400,000.

**IT IS THEREFORE ORDERED:**

(A) The Applications for Professional Fees and Costs awards filed by Perkins Coie and

Hamstreet and Associates approved and denied as provided above; and Perkins and Hamstreet are awarded the sum of $167,891.39 to each as a reasonable final fee and cost award.

     **IT IS FURTHER ORDERED** all other pending objections to said fee and costs applications filed by the Chapter 7 Trustee and First Interstate Bank, are denied.

                                        BY THE COURT

                                        /s/ John L. Peterson
                                        HON. JOHN L. PETERSON
                                        United States Bankruptcy Judge
                                        District of Montana